**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | | |
|---|---|---|
| GORSS MOTELS, INC., a Connecticut corporation, individually and as the representative of a class of similarly-situated persons,<br><br>Plaintiff,<br>vs.<br><br>SAFEMARK SYSTEMS, LP and JOHN DOES 1-5,<br><br>Defendant. | ) | Civil Action No.: 6:16-cv-1638-GAP-DCI<br><br>**CLASS ACTION**<br><br>**DISPOSITIVE MOTION** |

**DEFENDANT'S, SAFEMARK SYSTEMS, LP,**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

NOW INTO THIS COURT, through the undersigned counsel, comes Defendant Safemark Systems, LP ("Safemark"), who files this Motion to Dismiss Gorss Motels, Inc.'s ("GMI") Complaint, pursuant to Rule 12(b)(1) (lack of subject matter jurisdiction), Rule 12(b)(6) (failure to state a claim upon which relief can be granted), and Rule 8 (failure to plead requisite class allegations). Alternatively, Safemark moves the Court to exercise its discretion to stay these proceedings pending the resolution of Safemark's Petition for Retroactive Waiver of Opt-Out Notice Requirements, dated October 6, 2016, presently pending before the Federal Communications Commission. Pursuant to this Court's Local Rule 3.01(a) Defendant's arguments are set forth in the following Memorandum of Law, and the concurrently filed Declaration of Spensyr Ann Krebsbach, Esquire, and its supporting exhibits.

## MEMORANDUM OF LAW IN SUPPORT OF SAFEMARK'S MOTION TO DISMISS

## BACKGROUND

In this case, GMI alleges that defendant Safemark violated the Telephone Consumer Protection Act ("TCPA") by sending an unsolicited facsimile that advertised products and services. GMI alleges it was the recipient of a single page unsolicited facsimile on or about September 4, 2013. *See* Complaint (Docket Entry ("Doc.") 1 at ¶11). The fax, which GMI attached as Exhibit "A" to the complaint, provides client testimonials and informs recipients where Safemark can be found at an upcoming Wyndham Hotel franchise conference. The fax includes a 1-800 number, website, and email for contacting Safemark.

On September 19, 2016, GMI filed this lawsuit against Safemark, and John Does 1-5, seeking statutory damages and injunctive relief. *See* Complaint (Doc. 1). GMI brings the TCPA claims on behalf of itself and a proposed class consisting of

> [a]ll persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendants, and (3) from which Defendants did not have prior express invitation or permission, or (4) which did not display a proper opt-out notice.

*See* Complaint (Doc. 1 at ¶17).

## SUMMARY OF ARGUMENT

GMI's Complaint attempts to allege claims under the Telephone Consumer Protection Act of 1991 (the "TCPA"), as amended by the Junk Fax Protection Act of 2005 and codified at 47 U.S.C. §227. GMI, a serial TCPA litigant, alleges that all of the defendants, which

includes Safemark and 5 mystery John Does, transmitted a one page unsolicited fax on September 4, 2013 (the "Fax") to GMI. *See* Complaint (Doc. 1 at ¶11). Relying solely on "information and belief" GMI then purports to align his interest with "more than 25" or "at least forty" unnamed, unspecified class members who supposedly received the same or other unidentified facsimiles from Safemark. *See id.* at ¶14. Safemark hereby moves to dismiss the Complaint for three independent reasons.

First, GMI's Complaint cannot withstand the recent holding in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). As the Supreme Court explained, the allegation of a mere statutory violation – without more – cannot satisfy Article III's standing requirements, which require GMI to show that its injury is both particularized and 'concrete" – meaning "real and not abstract." *Spokeo*, 136 S. Ct. at 1545, 1548. The Court made clear that "Article III standing requires a concrete injury even in the context of a statutory violation," and that a Plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants [it] a statutory right and purports to authorize [it] to sue to vindicate that right." *Id.* at 1549.

Outside of the de minimus allegation of the loss of a piece of paper, ink, and the time to receive the fax, GMI's complaint does not identify a concrete harm experienced during the receipt of Safemark's one page fact. These de minimus harms are not sufficient to establish Article III standing. GMI has not alleged that any real harm resulted from receipt of the fax and merely attempts to pursue Safemark for its alleged "commercial" fax in noncompliance with the TCPA.

Second, GMI's Complaint alleges an improper "Fail-safe" class, which should be dismissed or stricken. Therefore, the Court should dismiss the class action claims based on

GMI's failure to comply with Rule 8, Federal Rules of Civil Procedure. As the Middle District concluded in a similar TCPA case, also involving GMI's present counsel, the Complaint in this case fails to provide the Court or GMI "with any factual basis other than a speculation based upon the Plaintiff's information and belief that some forty other businesses also receive the alleged facsimiles in violation of the TCPA." *See Daisy, Inc. v. Pollo Operations, Inc.*, No. 2:14-CV-564-FTM-38CM, Docket 53 (M.D. Fla. Mar. 27, 2015) (attached as Exhibit "A" to the Declaration of Spensyr Ann Krebsbach, Esquire, filed concurrently with this Motion to Dismiss).

Finally, should the Court decline to dismiss the Complaint, the Court should stay this proceeding pending resolution of Safemark's Petition for Retroactive Wavier of Opt-Out Notice Requirements ("Petition for Waiver") to the Federal Communications Commission ("FCC"). *See* Petition for Waiver attached as Exhibit "B" to the Declaration of Spensyr Ann Krebsbach, Esquire, filed concurrently with this Motion to Dismiss. The result of the petition for waiver will bear directly on whether this Court has subject matter jurisdiction over GMI's, and the purported class members', claims. A stay will result in no prejudice as the FCC decision on waiver would be expected to issue within the next several months.

Safemark, therefore, moves the Court for an order dismissing the Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. To the extent the Court declines to dismiss the Complaint, Safemark asks the court to stay this proceeding pending the FCC's resolution of its Petition for Retroactive Wavier of Opt-Out Notice Requirements.

## ARGUMENT

### I. Post-Spokeo "Concrete Harm" is required to establish Article III Standing

In order to satisfy the "irreducible constitutional minimum" of Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547 (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)). The plaintiff 'bears the burden of establishing these elements," and "[w]here, as here, a case is at the pleading stage, the plaintiff must *clearly* allege facts demonstrating each element." *Id.* (emphasis added) (quotation marks and ellipsis omitted). GMI has failed to establish an injury in fact, and therefore lacks standing to sue in this Court.

In *Spok*eo, the United States Supreme Court resolved that a plaintiff cannot establish Article III standing based solely on allegations of a statutory violation. *See Spokeo* 136 S. Ct. at 1549. The fact that *Spokeo i*nvolves FCRA violations and this case involves TCPA violations is irrelevant as the "legal issue of standing in both cases is the same." *See Figueroa v. Carrington Mortg. Servs. LLC*, No. 8:15-CV-2414-T-24TGW, 2016 WL 718289, at *3 (M.D. Fla. Feb. 22, 2016).

Plaintiff may attempt to argue that it has alleged a "concrete harm" by alleging loss of toner, paper, and time for the receipt of a one page fax, but that argument does not hold up in light of Plaintiff's contention that statutory harm experienced was Safemark's failure to include sufficient opt-out language pursuant to the TCPA. Plaintiff has not alleged that it tried and was unable to opt-out of future faxes, and they have not alleged subsequent faxes wasted its paper, toner and time due to the failure of the first fax to provide opt-out language.

Therefore, the Complaint cannot withstand the holding in *Spokeo*. As the Supreme Court explained, the allegation of a mere statutory violation – without more – cannot satisfy Article III's standing requirements, which require GMI to show that its injury is both particularized and "concrete" –meaning "real and not abstract." *Spokeo*, 136 S. Ct. at 1545, 1548. The Supreme Court made clear that "Article III standing requires a concrete injury even in the context of a statutory violation," and that a plaintiff does not "automatically satisfy[y] the injury-in-fact requirement whenever a statute grants [it] a statutory right and purports to authorize [it] to sue to vindicate that right." *Id.* at 1549.

Plaintiff may rely upon a pre-*Spokeo* 11th Circuit case, *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015), and an unpublished post-*Spokeo* 11th Circuit decision in *Church v. Accretive Health, Inc.*, 2016 U.S. App. LEXIS 12414 (11th Cir. July 6, 2016). These cases, however, do not defeat the instant Motion to Dismiss. The holding in *Palm Beach* rested on the conclusion that the TCPA's combination of "a private right of action for enforcement of violations of the statute" and "statutory damages" automatically satisfies Article III. *Palm Beach*, 781 F.3d at 1252. In *Palm Beach*, the Eleventh Circuit explained that, where it was indisputable that a plaintiff's facsimile machine was occupied during the "successful transmission" of a facsimile on behalf of the defendant, the plaintiff had established the type of statutory injury created by the TCPA. The core issue that mattered for standing purposes, according to the court in Palm Bach, was that the TCPA "confer[red] new legal rights" on the plaintiff, and the plaintiff had alleged "conduct prohibited by [the statute]." *Id.* at 1251. The Eleventh Circuit's conclusion, however, relies on the premise that Article III injury "may exist solely by virtue of 'statutes

creating legal rights, the invasion of which creates standing.'" *Palm Beach*, 781 F.3d at 1250 (*quoting Warth v. Seldin*, 422 U.S. 490, 500, 95 S. Ct. 21997, 2206, 45 L. Ed. 2d 323 (1975)). The plaintiff/appellant in *Spokeo* argued this very premise from *Warth* to the Ninth Circuit to support his claim to standing. *See Robins v. Spokeo, Inc.*, 742 F.3d 409, 412 (9th Cir. 2014). The United States Supreme Court has now rejected that premise, and therefore the premise underlying the *Palm Beach* holding. The holding in *Church* is therefore fatally flawed in it reliance on *Palm Beach* despite the *Spokeo* decision. GMI is required to plead a concrete "injury in fact" and not just a statutory violation "divorced from any concrete harm." *Spokeo*, 136 S. Ct. at 1549.

Under *Spokeo*, then, the allegation that Plaintiff received a one page fax without the required opt-out language[1] in violation of the TCPA is not enough, standing alone, to authorize GMI to sue in federal court. GMI instead may pursue relief in federal court only if it established that it has suffered a concrete injury that is "real" and that "actually exist[s]" as a result of Safemark's alleged failure under the TCPA. *Spokeo*, 136 S. Ct. at 1548. Courts applying *Spokeo* in the TCPA context have recognized that it compels a case-specific approach to standing, in which the plaintiff must allege a concrete harm beyond the mere violation of the statute in order to satisfy Article III.

For example, in *Sartin v. EKF Diagnostics, Inc.*, No. 16-1816, 2016 WL 3598297 (E.D.La. July 5, 2016), the court held that the recipient of a junk fax lacked standing. While he had "plausibly alleged that defendants violated the TCPA by sending unsolicited fax

[1] GMI alleges that Safemark's fax was unsolicited, or sent without consent. This allegation is contested, but for the purposes of this Motion to Dismiss, Safemark understands this allegation will be taken as if true. Safemark provides argument with that understanding. This argument is in no way an admission that Safemark agrees the complained of fax was unsolicited or sent without consent.

advertisements, he fail[ed] to plead facts demonstrating how this statutory violation caused him concrete harm." *Id.* at *3. It was not enough for the plaintiff in his complaint to "exhaustively describe[] the requirements of the TCPA" or to generally reference "Congress and the FCC," because the complaint did not allege "what specific injury, if any, [plaintiff] sustained through defendants' alleged statutory violation." *Id.*

In *Susinno v. Work Out World, Inc*., Civil Action No. 3:15-cv-05881 (D.N.J. Aug. 1, 2016), Doc. 26 (the "*Susinno* Order"), a court in the District of New Jersey granted the defendant's motion to dismiss pursuant to Rule 12(b)(1) for lack of standing where the Plaintiff's alleged injuries included "wasting Plaintiff's time" and "the loss of use of [the plaintiff's] phone during the time that her phone was occupied by incoming calls. *See Susinno* Order (attached as Exhibit "C" to the Declaration of Spensyr Ann Krebsbach, Esquire, filed concurrently with this Motion to Dismiss.). Borrowing from another Southern District of California TCPA dismissal, the court held "regardless of Congress's reasons for enacting the TCPA, one singular [fax], viewed in isolation and without consideration of the purpose of the [fax], does not cause any injury that is traceable to the conduct for which the TCPA created a private right of action." *Id.*, and *see Romero v. Dep't Stores Nat'l Bank*, -- F. Supp. 3d --, 2016 WL 4184099, at *5, (S.D. Cal. Aug. 5, 2016). "That the TCPA allows private suits for such [faxes] does not somehow elevate this non-injury into a concrete injury sufficient to create Article III standing. *Id.* at *6. Plaintiff's general and conclusory allegations that it suffered wasted time, and loss of a single piece of paper and ink, and that the facsimile line was tied up while the Fax was being transmitted, at the kind of "unadorned

speculation [about standing which] will not suffice to invoke the federal judicial power." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 44 (1976).

The *Spokeo* decision also bears on the standing of the purported class members. GMI alleges no facts, beyond speculation and conjecture, that the unnamed and otherwise unidentified purported class members suffered any damage beyond statutory violations.

***GMI did not suffer any concrete or Real Injury as a Result of the Single One Page Fax***

Under *Spokeo*, GMI lacks standing to pursue its TCPA claim, because it did not suffer any concrete injury from Safemark's failure to include more specific opt-out language as GMI alleges was required by the TCPA. As noted above, *Spokeo* definitively holds that a bare statutory violation, "divorced from any concrete harm," is not enough to create standing. *Spokeo*, 136 S. Ct. at 1549. But that is really all GMI purports to be asserting. Its generalized allegations that it received a one page fax, do not allege that GMI attempted to be removed from future faxing and could not due to the failure of Safemark to include the opt-out language, nor does GMI allege that it incurred subsequent waste of time or de minimus resources as a result of receiving future faxes because they could not opt-out. Further, GMI is complaining of a single one page fax received in 2013, and has made no allegations that it took any action or suffered any concrete harm following receipt of that fax. That GMI incurred wasted time through receipt of a single on page fax –a fax that GMI took no action on until the filing of this lawsuit almost 3 years later- is precisely the kind of purely "abstract," rather than "real" harm that *Spokeo* forecloses as a basis for Article III standing. *Spokeo*, 136 S. Ct. at 1548.

Nor does GMI alleges that it lost money or suffered from any other “real” and “not abstract” harm as a result of the Safemark fax’s failure to include opt-out language. While GMI does allege unsolicited faxes incur loss of a the cost of a single piece of paper, ink, and time to receive and read the fax, that is not dispositive of the issue of whether any harm arose from the statutory violation alleged which is the failure to include the proper opt-out language. As demonstrated by *Spokeo* courts must still assess a plaintiff's specific circumstances to determine if there has been a concrete injury. In sum, whether or not unsolicited faxes may cause some people injury, the question is whether the one page fax, without opt-out language, received by Plaintiff in this case imposed “real” harm on GMI. It did not. GMI’s interest in this lawsuit is not to redress any personal injury, but instead to pursue Safemark for its alleged “commercial” fax in noncompliance with the TCPA. *See* Complaint. This interest, however, is not a concrete injury. *See, e.g. Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 106, 118 S. Ct. 1003 (1998) (explaining that a general interest in “vindication of the rule of law…does not suffice” for Article III standing.

Because GMI cannot claim any “real” harm – and instead relies on Safemark’s exposure to alleged violations of the TCPA – it has not suffered an injury in fact within the meaning of Article III and therefore lacks standing to proceed with this lawsuit.

## II. GMI’s Fails to Comply with Rule 8, Federal Rules of Civil Procedure, by Failing to Plead Requisite Class Allegations

To satisfy the requirements of Fed. R. Civ. P. 8, a complaint must give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Wierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S Ct. 992, 152 L. Ed. 2d 1 (2002). Although the

pleading standard does not require detailed factual allegations, it does demand more than unadorned accusations of harm. *Sinaltrainal v. Coca-Cola Co.*, 578 F. 3d 1252, 1268 (11th Cir. 2009)(citing *Ascroft v Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949, 173 L. Ed 2d 868 (2009). Further, deductions of fact are not admitted as true for the purpose of testing the sufficiency of class action allegations. *Sinaltrainal*, 578 F. 3d at 1268. The facts plead must state a claim for relief that is plausible on its face. *Id.*

In the Complaint, GMI alleges as follows:

> Plaintiff is informed and believes, and upon such information and belief avers, that the number of persons and entities of the Plaintiff Class is numerous and joinder of all members is impracticable. Plaintiff is informed and believes, and upon such information and belief avers, that the number of class members is at least forty.

*See* Complaint (Doc. 1 at ¶18). GMI pleads that the class size is at least forty in number. GMI also argues that the number of facsimiles, the time and date sent, and names of recipients is information in the possession and control of Safemark, and should be ascertained through discovery. However, GMI provides no factual basis other than reciting the elements of a class action and stating it "believes" forty other businesses received the same fax it received. *Id.*

It is well settled in the Middle District that a class action complaint under the TCPA must provide fair notice of the claim in compliance with Rule 8, Federal Rules of Civil Procedure. Indeed, in *Daisy, Inc. v. Pollo Operations, Inc.*, the Middle District dismissed the class action allegations in an action based on the TCPA for Plaintiff's failure to comply with Rule 8, Federal Rules of Civil Procedure. *See Daisy, Inc. v. Pollo Operations, Inc.*, No. 2:14-CV-564-FTM-38CM, (M.D. Fla. Mar. 27, 2015), Docket 53 (the "*Daisy, Inc.* Order")

*See Daisy, Inc.* Order (attached as Exhibit "A" to the Declaration of Spensyr Ann Krebsbach, Esquire, filed concurrently with this Motion to Dismiss.). GMI's present counsel also served as counsel in the *Daisy, Inc.*, case, and is the signatory to the Complaints in both cases. *See id.* Surprisingly, despite counsel's knowledge such allegations have been held deficient; GMI's class action allegations in the instant case mirror the plaintiff's deficient class action allegations in *Daisy, Inc.* GMI, as did the plaintiff in Daisy, Inc., alleges only on "information and belief" the facsimiles at issue were sent to "at least forty unspecified class members. *See id.* at p. 9-10; *See also* Complaint (Doc. 1 at ¶18). In this case, GMI's Complaint simply recite the elements of the class action statute, and is void of any factual basis that would support an inference of years of unauthorized faxes sent to the putative class members.

The Middle District, Judge Sheri Polster Chappell, held that Rule 8 requires more than an "unadorned, 'the-defendant-unlawfully-harmed-me accusation." *See Daisy, Inc.* Order at p. 9-10. Judge Chappell further concluded that the complaint failed to provide the court "with any factual basis other than a speculation based upon the Plaintiff's information and belief that some forty other businesses also received the alleged facsimiles in violation of the TCPA." *Id. at p. 11.* In this case, GMI has pled in exactly the same way, providing nothing more than the same "formulaic recitation of the elements of a class action." *See id.*; *see also* Complaint (Doc. 1 at ¶18) ("Plaintiff is informed and believes, and upon such information and belief avers, that the number of persons and entities of the Plaintiff Class is numerous and joinder of all members in impracticable. Plaintiff is informed and believes, and upon such information and belief avers, that the number of class members is at least



861992v.1

forty."). GMI provides no factual basis "other than speculation based upon [GMI's] information and belief" that any facsimile was transmitted to any other person or entity at any time. As a result, following *Daisy, Inc.*, the Court should dismiss the Complaint under Rule 8 to the extent it purports to assert a class action claim.

### III. In The Alternative to Dismissal, A Stay Should Be Granted Pending Resolution of Safemark's Petition For Waiver of Opt-Out Requirements to the FCC

This court should stay the case if it does not dismiss it for lack of standing. Safemark's Petition for Retroactive Waiver of retroactive waiver of 47 C.F.R. §64.1200(a)(4)(iv) is filed and pending before the FCC since October 6, 2016. This Court possesses inherent power to stay a case. The power is "incidental to the power inherent in every court to control the disposition of the causes on its docket[.]" *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The touchstone considerations for a stay are judicial economy and efficiency. *Morrissey v. Subaru of Am., Inc.*, No. 1:15-cv-21106-KMM, 2015 U.S. Dist. LEXIS 96810, at *2 (S.D. Fla. July 24, 2015) (staying products liability action until related personal injury action in another venue concluded). Federal Courts routinely exercise their power to stay a proceeding where "a related matter is likely to have a substantial or controlling effect on the claims and issues in he stayed case." *Id.* (internal quotations and citations omitted).

As background, the Telephone Consumer Protection Act ("TCPA") prohibits the use of a fax machine to send unsolicited advertisements, subject to certain exceptions.[2] "Unsolicited advertisement" is defined to mean "material advertising. . . any property, goods,

---

[2] 47 U.S.C. §227(b)(1)(C).

or services which is transmitted to any person *without that person's prior express invitation or permission* . . . ."[3] In 2005, Congress enacted the Junk Fax Prevention Act, which requires the sender of an unsolicited fax advertisement to provide specific information that would allow recipients to 'opt-out' of any future fax transmissions from the sender.[4]

In implementing the Junk Fax Prevention Act, the Federal Communications Commission ("FCC") imposed an opt-out notice requirement on *solicited* fax advertisements by adopting the opt-out requirement, which states that fax advertisements "sent to a recipient that has provided prior express invitation or permission to the sender must include an opt-out notice."[5] This requirement seemingly contradicted the plain wording of the TCPA/JFPA, the application of which is limited to *unsolicited* advertisements. In addition the order adopting the rule the "*Junk Fax Order*" included a footnote that stated "the opt-out notice requirement only applies to communications that constitute *unsolicited* advertisements."[6] This apparent conflict led to considerable confusion among businesses.

In its *2014 Anda Commission Order*, the FCC recognized that due to the contradictory footnote in the *Junk Fax Order*, some parties that had sent fax advertisements with the recipients' prior invitation or permission may have reasonably been uncertain about whether the opt-out requirement applied to them.[7] Accordingly, the Commission granted a retroactive waiver of the opt-out requirement to certain petitioners facing lawsuits premised,

---

[3] 47 U.S.C. §227(a)(5) (emphasis added).
[4] 47 U.S.C. §227(b)(1)(C)(iii), (b)(2)(D).
[5] *See* 47 C.F.R. § 64.1200(a)(4)(iv); *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Junk Fax Prevention Act of 2005*, CG Docket Nos. 02-278, 05-338, Report and Order and Third Order on Reconsideration, 21 FCC Rcd 3787, App. A (2006) ("*Junk Fax Order*").
[6] *Id.* at 3810, n.154 (emphasis added).
[7] *2014 Anda Commission Order* at ¶¶ 24-26.

in part, on the failure to include opt-out language in faxes sent with prior invitation or permission.[8] The *Anda Commission Order* further afforded those similarly-situated to the petitioners therein an opportunity to request retroactive waiver and encouraged parties to make every effort to file such requests within six months of the release date, *i.e.*, April 30, 2015. However, the date was not fixed and allowed for waivers to be granted after that date. The Consumer and Governmental Affairs Bureau (the "Bureau") has in fact granted waivers filed after that date.[9] This is an issue central to the instant action as Safemark believes evidence will show all recipients of the Fax gave permission to receive the fax, and that Safemark would be entitled to exemption from liability but for the opt-out notice requirements of the FCC regarding solicited facsimiles.

Therefore, on October 6, 2016, Safemark filed a petition to the FCC for the grant of a retroactive waiver as to the requirement to include the statutory fax opt-out language on solicited facsimiles sent by Safemark. *See* Petition for Waiver attached as Exhibit "B" to the Declaration of Spensyr Ann Krebsbach, Esquire, filed concurrently with this Motion to Dismiss. The Commission has granted over 130 retroactive waivers to similarly-situated parties to-date and several more Petitions, including Safemark's, are pending. If granted, the waiver would remove an entire category of purported class members, *i.e.* those purported class members who consented or gave permission to be faxed, yet received faxes without generally required opt-out language. Defendant believes the evidence will show that GMI itself would be among the class members wiped out by the grant of the Petition for Waiver

[8] *Id.* at ¶¶ 1, 26-27.
[9] *Id.* at ¶ 2.

from the FCC which would be fatal to both Plaintiff's individual claims, and his status as a representative member of the class.

A stay makes sense here because the court should "zealously guard against [the] incautious exercise of its jurisdiction," *Terra Nova Ins. Co., Ltd. . Acer Latin Am., Inc.*, 931 F. Supp. 852, 855 (S.D. Fla. 1996), and the pendency of the FCC petition for waiver calls into question whether this court will have jurisdiction to adjudicate some of all of Plaintiff's claims, and/or whether the purported class is significantly reduced or eliminate.

Moreover, a brief stay will cause no prejudice to GMI who already waited three years after the receipt of the complained of fax to even file a lawsuit.. The FCC is expected to rule on the Petition for Waiver within the next several months. On the other hand, a stay will prevent GMI from "endur[ing] onerous discovery and significant expenses" that would be needlessly incurred if the Petition for Waiver resolved in GMI's favor. *Boise v. ACE USA, Inc.*, No. 15-CIV-21264, 2015 WL 4077433, at *6 (S.D. Fla. July 6, 2015). In light of the pending FCC Petition for Waiver, the lack of any resulting prejudice to GMI, and the corresponding harm to Safemark if a stay is denied, the Court should stay this action for the months pending resolution of Safemark's Petition for Waiver to the FCC.

## CONCLUSION

WHEREFORE, Safemark respectfully request this Court dismiss the Complaint, and/or Dismiss Plaintiff's Class Action allegations. In the alternative, Safemark asks the court to enter a brief stay pending resolution of Safemark's Petition for Retroactive Waiver to the FCC.

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(g)**

Counsel for Safemark Systems, LP, certifies that she has conferred with counsel for Gorss Motels, Inc., in a good-faith effort to resolve the issues raised in these motions, but counsel were unable to agree on the resolution of these motions.

**CERTIFICATE OF SERVICE**

I certify that on **November 4, 2016**, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system which will send a notice of electronic filing to the following: **RYAN M. KELLY, ESQUIRE,** Anderson + Wanca, (rkelly@andersonwanca.com, buslit@andersonwanca.com, bwanca@andersonwanca.com, sfitzgerald@andersonwanca.com), **ROSS M. GOOD, ESQUIRE**, Anderson + Wanca, (rgood@andersonwanca.com, sfitzgerald@andersonwanca.com) (Attorneys for Plaintiff).

/s/ Spensyr Ann Krebsbach
SPENSYR ANN KREBSBACH, ESQUIRE
Florida Bar No. 85132
spensyr.krebsbach@wilsonelser.com
Wilson Elser Moskowitz Edelman & Dicker LLP
111 North Orange Avenue, Suite 1200
Orlando, Florida 32801
407-203-7599 - Phone
407-648-1376 - Facsimile
Trial Counsel for Defendant,
SAFEMARK SYSTEMS, LP

and

JOSEPH L. FRANCOEUR, ESQUIRE
joseph.francoeur@wilsonelser.com

Wilson Elser Moskowitz Edelman & Dicker LLP
150 E 42nd Street
New York, NY 10017
Trial Counsel for Defendant,
SAFEMARK SYSTEMS, LP