**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| GORSS MOTELS, INC., and E & G, INC.  )<br>individually and as the representatives of a  )<br>class of similarly- situated persons,  )<br>  )<br>Plaintiffs,  )<br>v.  )<br>  )<br>SAFEMARK SYSTEMS, LP and JOHN  )<br>DOES 1-5,  )<br>  )<br>Defendants.  ) | No. 6:16-cv-1638-GAP-DCI |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiff, Gorss Motels, Inc., states as follows for its Reply in support of its Motion for Summary Judgment (Doc. 94), and in response to the Opposition filed by Defendant, Safemark Systems, LP ("Safemark") (Doc. 103).

**I.      Safemark is the "sender" of the 2013 Faxes and 2015 Fax.**

Safemark does not dispute that it is the "sender" of the 2013 Faxes. (Def.'s Opp. at 2). Safemark only argues it is not the sender of the 2015 Fax because "Plaintiffs have not produced any evidence, let alone undisputed evidence, that Safemark directed or otherwise authorized the 2015 Fax to be sent." (*Id.*)  Safemark argues that it is not strictly liable for sending the 2015 Fax simply because its products were advertised.  Safemark's arguments fail on the facts and the law.

As discussed in Plaintiffs' opening brief (Doc. 94 at 12), the term "sender," defined by the FCC as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement," *see* 47 C.F.R. § 64.1200(f)(10), is disjunctive—a fax can be sent on the advertiser's behalf, or the fax can advertise or promote a defendant's goods or services, or both, as is the case here. Safemark's "on behalf of" argument is predicated on ignoring the facts and in the process is irretrievably

inconsistent.  Safemark has been a WSSI "Approved Supplier" since 2002, and it entered into a Vendor Direct Supplier Agreement and Amendments ("DGA") with WSSI. (*See* Doc. 101, Pl.'s Resp. DSOF ¶ 9; PSOAF ¶ 32). Under the DGA, Safemark is required to pay a marketing fee to WSSI each year.  (PSOAF ¶¶ 33, 34). The DGA expressly states that "Fax Blast" is one of WSSI's "Marketing Programs."  (PSOAF ¶ 38).

The 2015 Fax was sent pursuant to and in accordance with the DGA.  Safemark was told by WSSI of "marketing opportunities" on July 14, 2015 (PSOAF ¶ 10); Safemark was advised by WSSI on August 25, 2015 that it had $11,847 in its marketing fund and that a "fax blast" was a marketing option (*id.* ¶ 11); WSSI confirmed to Safemark on November 17, 2015 that it would be "sending a fax blast in December," and that after paying for banner ads and the "fax blast" in December Safemark would have just over $2,000 remaining in its marketing fund that would be rolled over into 2016 (*id.* ¶ 12); WSSI on November 18, 2015 sent an email to Safemark confirming the fax blast would occur the first week of December 2015, and **included as an attachment the 2015 Fax** (*id.* ¶ 13); Safemark Contract Manager Michelle Anderson, who had authority to agree to the fax blast, never told WSSI not to send the 2015 Fax, and is unaware of anyone else contacting WSSI regarding the 2015 Fax (*id.* ¶¶ 16, 35); and Nancy Wright, Safemark's Vice President of Sales, testified that Anderson spoke to her regarding a fax blast, stating "I believe she said that Wyndham offered – suggested that we do a banner and a blast," and "I probably said fine" (*id.* ¶ 36).

These facts show beyond any genuine issue that the 2015 Fax was sent "on behalf of" Safemark, regardless of Safemark's claim that it did not respond to its contractual opposite WSSI as to the impending 2015 Fax blast. The proper reading of Safemark's "non-response" to the Rico emails is that Safemark had no changes to the 2015 Fax, had no objection to the

2

transmission of the 2015 Fax, and had no objection to being charged for said transmission, as Safemark didn't even know the source of the marketing money.  (*See* Doc. 60-5, at 5, Aug. 31, 2015 email exchange between Anderson and Wright wherein Anderson states she has "no clue" where the $11,847 referenced by Ms. Rico as being contained in Safemark's Marketing Fund).

The final nail in the "it wasn't us" coffin is that the 2015 Fax, which was provided to Safemark thirteen days before it was transmitted, provided in part that "All products and services are manufactured and/or provided by Safemark Systems and not Wyndham Worldwide Corporation (WWC) or its affiliates." (PSOAF ¶¶ 13, 37).   There is simply no room for Safemark to claim the 2015 Fax was not sent on its behalf.

The facts here do not remotely resemble those in *Health One Med. Ctr. v. Mohawk, Inc.*, 889 F.3d 800, 802 (6th Cir. 2018), mistakenly relied upon by Safemark (Def.'s Opp. at 4-5), wherein the defendants were unaware that faxes advertising their products were being sent by defendant Mohawk. Indeed, Safemark offers that WSSI provided it "with the opportunity to participate in marketing programs that are directed to WHG's lodging franchisees, including a program through which WSSI arranges for a third party to send faxes to franchisees" (Doc. 104, Def.'s Resp. PSOF ¶ 22), further eviscerating its mistaken reliance on *Health One*.

Safemark's reliance on *Compressor Eng'g Corp. v. Mfrs. Fin. Corp.*, 269 F. Supp. 3d 797, 809 (E.D. Mich. 2017), *see* Opp., Doc. 103, at 4, is equally misplaced as that decision, wherein the district court granted a TCPA defendant's motion for summary judgment based on the "on behalf of" portion of the definition of sender, was just reversed by the Sixth Circuit, which held there were genuine issues of material fact as to the "on behalf of" issue, including whether the defendant "edited the fax ads, approved the final drafts, and paid for them." *Compressor Eng'g Corp. v. Mfrs. Fin. Corp.*, 2018 WL 3949138, at *3 (6th Cir. Aug. 16, 2018);

*see also E&G, Inc. v. Mount Vernon Mills, Inc.*, 2018 WL 2932357, at *4 (D.S.C. June 12, 2018) (denying defendant's motion for summary judgment on "sender" issue).

Safemark is also a sender under the second prong of the definition in that the 2015 Fax is an advertisement for Safemark's "goods or services." (PSOAF ¶¶ 9, 37). Plaintiffs argued at length in their motion for summary judgment that numerous cases in the Eleventh Circuit have held that strict liability applies to the second prong of the definition, making Safemark a sender as a matter of law. (*See* Doc. 94, at 12-15 (citing *Arkin v. Innocutis Holdings, LLC*, 188 F. Supp. 3d 1304, 1309-10 (M.D. Fla. 2016); *JWD Automotive, Inc. v. DJM Advisory Group, LLC*, 218 F. Supp. 3d 1335, 1341 (M.D. Fla. 2016); *Scoma Chiropractic, P.A. v. Dental Equities*, 232 F. Supp. 3d 1201, 1205-06 (M.D. Fla. Jan. 11, 2017); *Senior Care Group, Inc. v. Red Parrot Distributors, Inc.*, 2017 WL 3288288, at *2 (M.D. Fla. Aug. 1, 2017)).

In addition, this Court in the recent case of *Bobo's Drugs, Inc. v. Fagron, Inc.*, 2018 WL 2762582, at *5 (M.D. Fla. June 8, 2018) (Honeywell, J.), again recognized that strict liability applies to the "second prong" of the sender definition, and to hold otherwise would likely violate the Hobbs Act. As stated, while numerous courts in the Eleventh Circuit have held that strict liability applies to defendants whose goods or services are advertised in faxes sent in violation to the TCPA, making Safemark a sender as a matter of law, the Court need not reach that issue because the undisputed facts show the 2015 Fax was sent on Safemark's behalf.

## II.     Safemark admits it did not obtain prior express permission to send the 2013 Faxes and 2015 Fax.

Plaintiffs have previously demonstrated that Safemark's various arguments for prior express permission, EBR, and compliant opt-out notice fail.  (*See* Pl.'s Mot. Summ. J., Doc. 94, at 15-21; Pl.'s Opp. Def.'s Mot. Summ. J., Doc. 102, at 6-12). It is now undisputed that **Safemark** did not obtain prior express permission from either Plaintiff to send fax

4

advertisements. (*See* Def.'s Resp. PSOF ¶¶ 18-21). That fact, in and of itself, is dispositive of the permission issue.

Safemark argues that "by becoming WHG franchisees, Plaintiffs agreed to participate in the Approved Supplier Program, whereby Plaintiffs agreed to receive fax advertisements from Approved Suppliers." (Def.'s Opp. at 5, 6). That statement, for which Safemark offers no citation, *see id.* at 6, is false. Plaintiffs have repeatedly challenged Safemark to point to any portion of the Wyndham Declarations/Affidavits, or the Franchising/Licensing Agreements, that provide prior express permission for Safemark, or any Wyndham entity, to send Plaintiffs fax advertisements, and Safemark has been unable to do so. *See Mount Vernon Mills*, 2018 WL 2932357, at *3 (denying summary judgment as to permission in case involving WSSI Approved Supplier program, finding that defendant "has not established as a matter of law that there was any such express permission" and where defendant's Vice President of Sales admitted it did not obtain prior express permission);

In PSOF ¶ 24, Plaintiffs asserted that the Wyndham Franchising/Licensing Agreements did not provide Wyndham prior express permission to send fax advertisements. (Doc. 94 at 7-8, PSOF ¶¶ 23-27). Safemark attempts to oppose PSOF ¶ 24 by citing to Sections 4.4 and 17.3 of the 2014 Super 8 Franchise Agreement, but those terms cannot accomplish the task. Section 4.4 "Purchasing and Other Services," provides:

> We may offer optional assistance to you with purchasing items used at or in the facility. Our affiliates may offer this service on our behalf. We may restrict the vendors authorized to sell proprietary or Mark-bearing items in order to control quality, provide for consistent service or obtain volume discounts. We will maintain and provide to you lists of suppliers approved to furnish Mark-bearing items, or whose products conform to System Standards.

(Doc. 70-6, at 50; Super 8 Worldwide, Inc. Franchise Agreement, ¶ 4.4). Section 4.4 does not contain the words "facsimile," "fax", or "advertisement," and states nothing regarding prior

express permission to send fax advertisements. The term "assistance" in Section 4.4 does not somehow operate as a proxy to establish "prior express permission." Section 17.3, "Notices," a subsection of Section 17 "Legal Matters," provides in part:

> Notices will be effective if in writing and delivered by facsimile transmission with confirmation original sent by first class mail, postage prepaid, by delivery service, with proof of delivery, or by first class mail, prepaid certified or registered mail, return receipt requested, to the appropriate party at its address stated below or as may be otherwise designated by notice. Notices shall be deemed given on the date delivered or date of attempted delivery, if refused.

(Doc. 70-6, at 219, Franchise Agreement, ¶ 17.3). Section 17.3 does not contain the word "advertisement," and states nothing regarding prior permission to send fax advertisements.

Plaintiffs have previously addressed Safemark's reliance on *Practice Mgmt. Support Servs. v. Appeal Solutions, Inc.*, 2010 WL 748170, at *3 (N.D. Ill. Mar. 1, 2010), *Landsman & Funk P.C. v. Loran Bus. Center, Inc.*, 2009 WL 602019, at *1, 2 (W.D. Wisc. Mar. 9, 2009), and *Travel 100 Group, Inc. v. Mediterranean Shipping Co., Inc.*, 889 N.E.2d 781, 787 (1st Dist. 2008), for the proposition that voluntary communication of a fax number (to Wyndham) precludes Plaintiffs from asserting the Faxes were unsolicited. (*See* Doc. 94, at 20, 21; Doc. 102, at 18). Safemark now offers *CE Design, Ltd. v. Ernida*, 2017 IL App (1st) 161129-U (Ill. App. Ct. 2017), and *CE Design, Ltd. v. Speedway Crane, LLC*, 2015 IL (1st) 132572 (Ill. App. Ct. 2015), but these cases fare no better.

Plaintiffs have established as a factual matter that neither Safemark nor Wyndham obtained prior express permission to send fax advertisements, making Safemark's reliance on *Ernida* and *Speedway Crane* a nonstarter. Moreover, both opinions specifically recognize that the faxes at issue in each case were sent prior to the FCC's ruling in *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991; Junk Fax Prevention Act of 2005*, 21 FCC Rcd. 3787, 3811-12 ¶¶ 45–46 (rel. Apr. 6, 2006) ("2006 Order"), further making them

inapplicable. *See Speedway Crane*, 2015 IL (1st) 132572, ¶ 1; *Ernida*, 2017 IL App (1st) 161129-U, ¶ 8. As set forth in the 2006 Order, the "sender," as defined in 47 C.F.R. § 64.1200(f)(10), must obtain <u>prior</u> <u>express</u> <u>permission</u> to send a fax advertisement from the <u>recipient</u>. 2006 Order, ¶¶ 45–46. Here, it is undisputed that **Safemark** did not obtain prior express permission.

Finally, in *Speedway Crane*, 2015 IL (1st) 132572, ¶ 28 (emphasis added), relied upon by *Ernida*, the court agreed that "generally, publishing contact information in an industry directory **does not** negate the requirement that a company must first obtain prior express permission." In holding that the plaintiff (CE Design) provided permission to be sent a fax ad, the court relied on the fact that plaintiff did not just publish its number in an industry directory (Blue Book), it entered into a contract with Blue Book (becoming a Blue Book customer) and purchased "an extensive advertising program," *id*. ¶ 30, and thus "took significantly greater steps to ensure that its contact information would be available to Blue Book customers than ordinary free-listed users," *id*. ¶ 31; *see also Ernida*, 2017 IL App (1st) 161129-U, ¶ 14.

Here, Plaintiffs did not purchase any advertising as in *Speedway Crane* and *Ernida*, nor did they request to be placed in any Wyndham directory. Instead, franchisee Plaintiffs simply provided their fax numbers to franchisor Wyndham, as part of their contact information to receive notice. (*See* Doc. 70-6, at 219, Franchise Agreement, ¶ 17.3). That Wyndham decided to put its franchisees' fax numbers in a directory of its hotels does not somehow operate to establish prior express permission for Safemark or Wyndham to send Plaintiffs fax advertisements, and certainly does not make said directory the equivalent of the Blue Book.

Safemark claims Plaintiffs' argument that they are not required to opt-out is a "red herring" because Safemark is arguing that "Plaintiffs' failure to opt out is the reason the Faxes

were solicited," and that "due to the prior permission provided by Plaintiffs to receive faxes from Approved Suppliers, the only way for them to stop receiving such faxes was to advise WHG or the Supplier that they no longer wished to receive fax advertisements."  (Def.'s Opp. at 13).

First, Safemark's argument is based on the faulty predicate that it (or Wyndham) had prior express permission to send Plaintiffs fax ads, which neither did, making in applicable *Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078 (D.C. Cir. 2017). *See Gorss Motels, Inc. v. American Tex-Chem*, 2018 WL 4026730, at *6 (D. Conn. Aug. 22, 2018) (failure to demonstrate prior express permission on motion for summary judgment obviates need for court to address whether *Bais Yaakov* applicable).

Second, the FCC has ruled that a sender cannot obtain prior express permission using a "negative option," where it "presumes consent unless advised otherwise." 2006 Order ¶ 45 & n.168. Recently, in *Physicians Healthsource, Inc. v. A-S Medication Solutions, LLC*, --- F. Supp. 3d ---, 2018 WL 3993409, at *5 (N.D. Ill. Aug. 21, 2018), the district court in a TCPA fax case granted plaintiff and the certified class summary judgment on the permission issue, relying on the FCC's preclusion of a "negative option," and further stating that simply adding a fax number into a database "does not show or even permit a reasonable inference that the customer agreed to receive faxed ads" in that the customer "may have simply filling in all of the blanks or may have intended only to receive ordinary fax messages in the course of business, as opposed to advertisements."

The court further stated that express permission "is something more than the absence of objection to an established practice, or even a conscious choice to accept an established practice of allowing faxes because it seems less onerous at the time than taking the initiative to send a separate communication opting out of the practice." *Id*. at *7 (quoting *Physicians Healthsource,*

*Inc. v. Stryker Sales Corp.*, 65 F. Supp.3d 482, 496 (W.D. Mich. 2015); *see also American Tex-Chem*, 2018 WL 4026730, at *5 ("while voluntary communication of a fax number could lend support to an argument that there was an established business relationship between the parties, it does not, in and of itself, support an argument that the faxes were unsolicited, *i.e.*, that there had been prior express invitation or permission for their transmission").  Stated another way, to find that mere "voluntary communication" of a fax number, 47 U.S.C. § 227(b)(1)(C)(ii), is tantamount to "prior express invitation or permission" to send fax advertisements would make the EBR defense superfluous.

Third, Safemark's opt-out argument is fundamentally flawed. The statute and the FCC regulations provide that the only way to *demand* that future faxes stop (as opposed to merely requesting it) is to follow the instructions on the fax. 47 U.S.C. § 227(b)(2)(E); 47 C.F.R. § 64.1200(a)(4)(v). The FCC has confirmed that the obligations on the sender and the recipient work "in concert" with each other, acknowledging that "fax senders are under no obligation to honor opt-out requests where their faxes do not include the required opt-out information" but noting the recipient's remedy is to sue the sender for violating the opt-out requirements. *In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, 29 FCC Rcd. 13998, 14007, ¶ 20, n.73 (Oct. 30, 2014), *vacated on other grounds*, *Bais Yaakov*, 852 F.3d 1078.  Here, the 2013 Faxes have no opt-out notice, and the 2015 Fax opt-out notice fails to state that Plaintiffs' fax numbers must be included, thus failing to disclose the steps Plaintiffs must take to make an enforceable opt-out request.

## Conclusion

Plaintiffs respectfully request that the Court grant Plaintiffs' motion for summary judgment as to liability, and that it withhold entry of judgment as to statutory damages (if the

Court grants Plaintiffs summary judgment on liability) until after Plaintiffs' Rule 23(f) appeal is decided.

Dated: August 31, 2018                     Respectfully submitted,

                                           By:  /s/ Ryan M. Kelly
                                           Ryan M. Kelly – Florida Bar No.: 90110

                                           ANDERSON + WANCA
                                           3701 Algonquin Road, Suite 500
                                           Rolling Meadows, IL 60008
                                           Telephone: (847) 368-1500
                                           Facsimile: (847) 368-1501
                                           rkelly@andersonwanca.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

_/s/ Ryan M. Kelly_____