**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | | |
|---|---|---|
| GORSS MOTELS, INC., a Connecticut corporation, and E & G, INC., a West Virginia corporation, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) ) | Civil Action No.: 6:16-cv-1638-GAP-DCI |
| Plaintiff, | ) ) | **DEFENDANT SAFEMARK SYSTEMS,** |
| vs. | ) ) | **LP'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY** |
| SAFEMARK SYSTEMS, LP and JOHN DOES 1-5, | ) ) ) | **JUDGMENT (DKT. 96)** |
| Defendant. | ) ) | |

## I.      INTRODUCTION

The Opposition filed by Plaintiffs, GORSS MOTELS, INC. ("GORSS") and E&G, INC. ("E&G") (collectively, "Plaintiffs"), indisputably establishes that Defendant, SAFEMARK SYSTEMS, LP ("Safemark"), is entitled to judgment as a matter of law.  Notably, Plaintiffs concede that they consented to receive advertising as part of the Approved Supplier Program and only allege that they did not specifically authorize that the advertisements could be sent via fax. Plaintiffs also admit that Safemark did not authorize or direct Wyndham to send the 2015 Fax. Thus, Plaintiffs have failed to present the Court with any undisputed material facts that would preclude judgment in Safemark's favor.  Their further arguments are, as Plaintiffs concede, issues of law appropriate for resolution by the Court on summary judgment.

## II.      RESPONSE TO PLAINTIFFS' STATEMENT OF ADDITIONAL FACTS

Paragraphs 1 - 13 and 16 - 32 of Plaintiffs' Statement of Additional Facts are nearly

9266484v.1

identical to Plaintiffs' Statement of Material Facts [Doc. 94 at pp. 3-10] made in support of

Plaintiffs' summary judgment motion.  Therefore, Safemark incorporates its Responses filed in

Opposition to Plaintiffs' Motion for Summary Judgment [Doc. 104].

In regards to Paragraphs 14 and 15, Safemark disputes these facts to the extent they are

presented out of chronological order in an effort to imply that Anderson does not recall whether

she responded to an email from Rico inquiring if Safemark wanted to participate in a December

2015 fax blast.  Taken in context of her deposition, Anderson identified her email response to

Rico, in which Anderson discussed the terms of the online banner advertisement and did not

respond to Wyndham's offer to send a fax blast.  [*See* Doc 60-5 at pp. 16-17].

In connection with Paragraphs 33 - 37, Safemark disputes these facts to the extent that

they imply that Safemark created the 2015 Fax or provided approval to Wyndham to send the

2015 Fax.  There is no evidence that Safemark created the 2015 Fax, modified the 2015 Fax, or

authorized the sending of the 2015 Fax.  [*See* DSOF ¶ 33].

Finally, concerning Paragraph 38, Safemark notes that the DGA permits Safemark to

participate in over thirty different marketing programs that are not brand specific, and thus, its

marketing fund can be utilized for its participation in any of these programs and was not a fund

for sending fax blasts.  [Doc. 70-3, Page ID 676].

## III.   <u>ARGUMENT</u>

Plaintiffs failed to "do more than simply show that there is some metaphysical doubt as to

the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  No

rational trier of fact could find for Plaintiffs based on the record evidence.  *See Matsushita Elec.*

*Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).  Accordingly, the Court should grant

2

Safemark's motion for summary judgment (Dkt. 96).

### A.  Plaintiffs Failed to Demonstrate That They Did Not Provide Prior Express Invitation or Permission to Receive the Faxes

Plaintiffs admit that they provided their fax numbers to their respective franchisors as a means of contact, that they agreed to receive advertisements from franchise affiliates pursuant to the Approved Supplier Program, that Plaintiffs' fax numbers were contained in a directory of franchisees, and that Plaintiff E&G posted its fax number on its website as of December 2015. [Doc. 101 (Resp. DSOF) ¶¶ 16, 21-23].  Under established law, these facts constitute prior express permission or invitation to receive fax advertisements from Plaintiffs' franchisors or franchise affiliates such as Safemark.  *See Practice Mgmt. Servs. Inc. v. Appeal Solutions,* No. 09 C 1937, 2010 U.S. Dist. LEXIS 17714, at *3, 10 (N.D. Ill. Mar. 1, 2010); *Landman & Funk, P.C. v. Lorman Bus. Ctr., Inc.*, No. 08-cv-481-bbc, 2009 U.S. Dist. LEXIS 18114 (W.D. Wis. Mar. 9, 2009); *Travel 100 Group, Inc. v. Mediterranean Shipping Co. (USA)*, 383 Ill. App. 3d 149, 158-159 (Ill. App. 2008).  Plaintiffs fail to cite any contrary authority, and instead only cite to authority requiring clear and convincing evidence of prior permission, which does nothing to support their position, especially when Plaintiffs have conceded that they gave permission to receive advertisements.  [*See* Opp. at p. 6; Doc. 70-11, 59:5-11].

Plaintiffs' reliance on their own self-interested testimony is not sufficient to establish that they never gave Safemark permission to send the Faxes.  This is particularly true in light of the fact that Plaintiffs also testified that they were aware of the Approved Supplier Program and knew that Wyndham and its affiliates would send fax advertisements offering assistance in purchasing products and services.  [Doc. 70-11 at 42:18-43:15, 59:5-60:21; Doc. 70-12 at 41:2-

42:7].  Plaintiffs also admitted that they did not advise Wyndham or its affiliates that they did not

wish to receive advertisements from Approved Suppliers via fax.  [Doc. 70-11 at 70:20-71:21;

Doc. 70-12 at 32:6-20].  Thus, Plaintiffs expressly admitted that they permitted the receipt of fax

advertisements from Approved Suppliers.

Likewise, the Franchise Agreements expressly reference that franchisees may be

contacted by Wyndham or its affiliates in connection with the Approved Supplier Program.

[Doc. 70-6, Ex. B §§ 4.4, 17.3 and Ex. D; Doc. 70-6, Ex. I §§ 4.4, 17.3].  Further, both Plaintiffs

provided their fax number on the Site Contact Form, thereby providing express permission to

Wyndham and its affiliates to contact them via fax.  [Doc. 70-6, Ex. C; Doc. 70-6, Ex. J].

Therefore, the documents establish that Plaintiffs provided express permission to receive faxes

from Wyndham and its Affiliates, including Safemark.

Furthermore, Plaintiffs' argument concerning their failure to opt-out of receiving fax

advertisements as part of the Approved Supplier Program is a red hearing because the faxes here

were solicited and there is no issue concerning mitigation of damages.  [Doc. 103 at p. 13-14].

Finally, Plaintiffs lump themselves together when arguing that there is no established

business relationship ("EBR") between them and Safemark.  However, Plaintiffs miss the point

of Safemark's position.  The EBR exemption applies here because Wyndham sent the 2015 Fax,

not Safemark, and there is an established business relationship between Plaintiffs and Wyndham

by virtue of the franchise agreements.  [Doc. 103 at pp. 14-16].

### B.  Safemark Established that Plaintiffs Have No Standing to Bring this Lawsuit

#### 1.  Gorss Assigned its Claims

Plaintiffs do not contest that TCPA claims cannot be assigned.  Opp. at pp. 15-16.

9266484v.1

Instead, Plaintiffs contend that Gorss did not assign its right to bring a TCPA claim when it sold

the Super 8 Motel. Id. However, the Purchase and Sale Agreement executed by Gorss on or

about May 25, 2016 states otherwise.[1]  Through this Agreement, Gorss sold the Premises and the

business to the Patels.  Agmt. at p. 1.  The Agreement describes the Premises in Section 1.1, and

states that Gorss is selling the fixtures and personal property used in connection with the

operation of the Super 8 Motel, as well as the facsimile numbers.  Notably, fax machine is listed

on the exhibit to the Agreement listing the personal property to be transferred.  Agmt. at p. 35.

Thus, it is clear that Gorss sold the fax machine that was allegedly harmed by the Faxes.

In addition, Gorss sold "the right, title, and interest in and to the Premises."  Agmt. at §

1.1.  The TCPA claim clearly falls within this clause.  Therefore, the Agreement specifically

stated that Gorss was selling the claims at issue in this lawsuit, and Plaintiffs have not contested

the validity of the Agreement.

### 2. Professional Plaintiffs Are Outside the TCPA's Zone of Interests, and Thus, Do Not Have Standing

As explained in Safemark's moving papers, Gorss does not fall within the TCPA's zone

of interests because the TCPA was designed to protect consumers from unwanted advertising,

and the record establishes that Gorss "wanted" to receive the faxes, and therefore, it is not the

type of consumer that the statute intended to protect.  [Doc. 96 at pp. 12-16].  In fact, Gorss

ignored opt-out language, did not request to be removed from the Approved Supplier Program,

never complained about receiving fax advertisements to WHG, and collected all fax

---

[1] Safemark did not attach the Purchase and Sale Agreement as an exhibit to its moving papers
due to its confidential nature.  Notably, Plaintiffs produced a copy of the Agreement during
discovery in this matter, and therefore, they are clearly aware of the terms of the Agreement.

5

advertisements to give to his counsel.  [Doc. 95, SOF ¶¶ 6, 11, 35].

Plaintiffs' contention that *Stoops v. Wells Fargo Bank, N.A.*, a Western District of Pennsylvania case, was "disposed of" by a District of Minnesota case is absurd.  Opp. at p. 12 (*citing Sandusky Wellness Ctr. v. MedTox Scientific, Inc.*, 2017 WL 1483330 (D. Minn. Apr. 25, 2017)).  The *MedTox Scientific, Inc.* Court distinguished *Stoops* based on the fact that the *Stoops* plaintiff was a professional plaintiff, whereas the *MedTox* plaintiff was a medical clinic. *Sandusky Wellness Ctr., LLC v. MedTox Scientific, Inc.*, 250 F.Supp.3d 354, 358 (D. Minn. 2017).  Although Plaintiffs want the Court to believe that they are more like the *MedTox* plaintiff, they are not.  Gorss admitted that he collected the faxes for future litigation, and has since filed approximately 20 lawsuits based on these faxes.  Motion at p. 15.  Thus, this Court should follow the *Stoops* analysis, as Gorss is most analogous to the *Stoops* plaintiff.

### 3.  Plaintiffs Lack Article III Standing

#### a.  The Court Should Revisit its Prior Decision on Article III Standing

Plaintiffs cite to this Court's prior decision regarding standing to contend that they have standing.  *Gorss Motels, Inc. v. Safemark Systems, LP*, 2017 U.S. Dist. LEXIS 1399 (M.D. Fla. Jan. 5, 2017).  This argument fails for three reasons.  First, this Court rendered its decision a month before the First Amended Complaint was filed.  Thus, this Court has not had the opportunity to determine whether E&G has Article III standing or whether standing exists in light of the amended pleadings.  Second, this Court based its decision solely on the pleadings as opposed to record evidence.  *See* 2017 U.S. Dist. LEXIS 1399, at *2.  Third, this Court focused its decision on the first element of standing — an injury in fact.  *See* 2017 U.S. Dist. LEXIS

6

1399, at *2.  However, Safemark's present argument focuses on the second element — an injury

that is "fairly traceable to the challenged conduct of the defendant."  *See* Motion at pp. 16-20.

As explained in Safemark's motion, there is no causal relationship between the alleged injury

and Safemark's conduct.  *See* Motion at p. 18-20.  Thus, the Court is now presented with the

opportunity to consider Safemark's challenge to the second element of standing.

### b.  The Alleged Non-Compliant Opt-Out Notice is Insufficient to Establish Article III Standing

The cases cited by Plaintiffs to support their argument regarding the opt-out notices are

not controlling or even persuasive, as all are district court cases in other circuits.  However, the

Eighth Circuit recently held that a plaintiff did not have Article III standing where the alleged

injury was not traceable to the noncompliant opt-out notice.  *St. Louis Heart Ctr., Inc. v. Nomax,*

*Inc.*, No. 17-1794, 2018 U.S. App. LEXIS 21662 (8th Cir. Aug. 6, 2018).  In *Nomax*, the

defendant allegedly sent the plaintiff twelve fax advertisements, which contained a fax number to

which the recipient could return the form to request the product, a box that could be checked if

the recipient wished to opt-out of the faxes, and contact information for the defendant.  *Id.* at *2.

The plaintiff alleged that the faxes lacked compliant opt-out notices.  *Id.* at *2.  The alleged

injuries included loss of paper and toner, interference with use of the fax machine and phone

line, and waste of employees' time to review the faxes.  *Id.* at *2-3.  The *Nomax* "class action

was based upon the fact that the facsimiles that were sent did not have the proper opt-out notice,

and was not based upon the fact that consent was not given."  *Id.* at *3-4.  The court found that

even assuming that "loss of toner and paper, and wasted time are sufficient to allege an injury in

fact," the defendant was unable to show that such an "injury is fairly traceable to an alleged

9266484v.1

violation of the TCPA." *Id.* at *7.  Specifically, the court stated that the opt-out notice

"covey[ed] to recipients the means and opportunity to opt-out of receiving future faxes," and that

plaintiff could have opted out but chose not to.  *Id.* at *9.

This Court should apply the *Nomax* reasoning and find that Plaintiffs lack Article III

standing.  Plaintiffs knew that the Faxes were sent as part of the Approved Supplier Program,

and knew that they could have contacted Wyndham to request that they stop receiving the fax

advertisements.  Plaintiffs declined to do so.  Therefore, "[a]ny technical violation in the opt-out

notices . . . did not cause actual harm or create a risk of real harm."  *St. Louis Heart Ctr., Inc. v.*

*Nomax, Inc.*, No. 17-1794, 2018 U.S. App. LEXIS 21662, at *9.

### C.  The Evidence Shows that Safemark Was Not the Sender of the 2015 Fax

Plaintiffs' argument that Safemark was the Sender of the 2015 Fax falls short because

Plaintiffs fail to point to any evidence through which Safemark approved or otherwise authorized

the sending of the 2015 Fax.  Instead, Plaintiffs recount the e-mails between Safemark and

Wyndham regarding the end of the year marketing.  Opp. at pp. 16-17.  However, there is

nothing in this email exchange that can be construed as Safemark's approval or authorization to

send the 2015 Fax.  Courts have found that the agency rules apply when determining whether a

fax was sent on behalf of someone else.  *Paldo Sign and Display Comp. v. Wagener Equities,*

*Inc.*, 825 F.3d 793, 797 (7th Cir. 2016).  Thus, to prove that Wyndham had permission to send

the 2015 Fax, Safemark would have had to expressly tell Wyndham to send it, which it did not.

Likewise, Plaintiffs failed to establish that Safemark should be held liable for the 2015

Fax because its goods were advertised.  *See* Doc. 103 at pp. 3-4.  Applying a strict liability test as

to the sender would lead to absurd results and should be rejected. Courts have "rejected a reading

9266484v.1

of the regulations that would impose strict liability on a company whose goods or services were advertised, recognizing that this would lead to absurd and unintended results." *See Paldo Sign and Display Comp.*, 825 F.3d at 797; *accord Forest Watch v. U.S. Forest Serv.,* 410 F.3d 115, 117 (2d Cir.2005); *Dantran, Inc. v. U.S. Dep't of Labor*, 171 F.3d 58, 65 (1st Cir. 1999).

Plaintiffs also contend that Safemark's reliance on *Compressor Engineering Corp. v. Mfrs Financial Corp.*, 269 F.Supp.3d 797 (E.D. Mich. 2017), is misplaced because the decision was reversed following the filing of Safemark's motion. Opp. at pp. 17-18. Had Plaintiffs done a thorough reading of the Sixth Circuit's decision, they would have realized that the decision was reversed based on the evidence, not on the law. [Doc. 101-1 at pp. 5-8]. The Sixth Circuit noted that the "standard requires that the plaintiff more than simply show that the defendant's goods or service were advertised in the offending fax," and that courts should consider the *Siding & Insulation* eight factors when determining whether the fax was sent on another's behalf. [Doc. 101-1 at p. 5]. Thus, Safemark's reliance on *Compressor Engineering Corp.* is not misplaced, and the Sixth Circuit's decision does not change the fact that Plaintiffs cannot establish that the 2015 Fax was sent on Safemark's behalf.

### D. Plaintiffs' Argument that *Bais Yaakov* Is Not Controlling is Unavailing, and Thus, Solicited Faxes Do Not Require Opt-Out Language

This Court has already found *Bais Yaakov* persuasive, and stated that it would "not apply the Solicited Fax Rule to the facts of this case." Motion at p. 9 (*citing* Doc. 84). As previously briefed, numerous courts have found *Bais Yaakov* to be binding, the Court's decision to not follow the Solicited Fax Rule does not violate the Hobbs Act, and Plaintiffs' theory would lead to inconsistent results across the country. [*See* Doc. 103 at pp. 16-19]. Plaintiffs incorrectly

contend that the sole forum rationale is mistaken.  *See* Opp. at pp. 19-20.  *Bais Yaakov* arose

from the Multidistrict Litigation Panel's decision to consolidate multiple petitions challenging

the Solicited Fax Rule, and thus, the consolidation made the D.C. Circuit the sole forum for

addressing the validity of the Rule, in order to ensure consistency among the circuits.  *See*

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 467-468 (6th Cir.

2017); *Westinghouse Elec. Corp. v. U.S. Nuclear Regulatory Com.*, 598 F.2d 759, 766-767 (3d

Cir. 1979).  Because Plaintiffs provided express invitation or permission to receive the Faxes, as

described above and in Safemark's moving papers, the Faxes did not require opt-out language.

### E.  Plaintiffs Fail to Address Safemark's Argument that Summary Judgment is Warranted on the Issue of Treble Damages

In its moving papers, Safemark explained why it cannot be held liable for treble damages

under the TCPA.  Motion at p. 24.  However, Plaintiffs failed to address this argument in their

opposition, and, as such, Plaintiffs have abandoned their treble damages claim.  *Rumbough v.*

*Experian Info. Solutions, Inc.*, No. 6:12-cv-811-Orl-22DAB, 2014 U.S. Dist. LEXIS 186329, at

*15 (M.D. Fla. Jan. 8, 2014); *see, e.g. Bentancourt v. State of Florida Dept. of Corr.*, No. 3:13-

cv-00287-J-20JRK, 2014 U.S. Dist. LEXIS 185009, at *29-30 (M.D. Fla. Nov. 30, 2014).

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant SAFEMARK SYSTEMS, LP respectfully requests

that the Court grant its motion for summary judgment (Dkt. 96), and dismiss Plaintiffs' claims in

their entirety with prejudice.

Respectfully submitted this 31st day of August, 2018,

| /s/ Amy L. Baker | |
| --- | --- |

9266484v.1

| | |
|---|---|
| AMY L. BAKER, ESQ.<br>Florida Bar No. 86912<br>Wilson Elser Moskowitz Edelman & Dicker LLP<br>111 North Orange Avenue, Suite 1200<br>Orlando, Florida 32801<br>407-203-7599 - Phone<br>407-648-1376 – Facsimile<br>amy.baker@wilsonelser.com | JOSEPH L. FRANCOEUR, ESQ.<br>Pro Hac Vice<br>Wilson Elser Moskowitz Edelman & Dicker LLP<br>150 E 42nd Street<br>New York, NY 10017<br>212-915-5638 - Phone<br>212-490-3038 - Facsimile<br>joseph.francoeur@wilsonelser.com<br><br>Attorneys for Defendant,<br>SAFEMARK SYSTEMS, LP |

## **CERTIFICATE OF SERVICE**

I certify that on **August 31, 2018**, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system which will send a notice of electronic filing to the following: **RYAN M. KELLY, ESQUIRE,** Anderson + Wanca, (rkelly@andersonwanca.com, buslit@andersonwanca.com, bwanca@andersonwanca.com, sfitzgerald@andersonwanca.com), **ROSS M. GOOD, ESQUIRE**, Anderson + Wanca, (rgood@andersonwanca.com, sfitzgerald@andersonwanca.com) (Attorneys for Plaintiff).

/s/ Amy L. Baker
AMY L. BAKER, ESQUIRE
Florida Bar No. 86912

9266484v.1