# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**GORSS MOTELS, INC. and E & G, INC.,**

  **Plaintiffs,**

**v.**                Case No: 6:16-cv-1638-Orl-31DCI

**SAFEMARK SYSTEMS, LP,**

  **Defendant.**

## ORDER

This matter comes before the Court without a hearing on the Motion for Summary Judgment (Doc. 94) filed by the Plaintiffs, Gorss Motels, Inc. (henceforth, "Gorss") and E & G, Inc. ("E & G"), and the Motion for Summary Judgment (Doc. 96) filed by the Defendant, Safemark Systems, LP ("Safemark"). Because the motions are essentially mirror images of one another, they will be considered together.

In resolving these motions, the Court has considered the parties' responses (Doc. 102, 103) and replies (Doc. 105, 107) to the motions for summary judgment, as well as the parties' statements of undisputed facts (Doc. 95, 104) and the responses to them (Doc. 101, 106).

**I. Background**

The instant case arises out of two facsimile advertisements sent to Gorss in 2013 (the "Gorss Faxes") and a third sent in 2015 to E & G (the "E & G Fax"). All three faxes advertised goods offered by the Defendant, Safemark. Safemark admits having sent the Gorss Faxes – or, more particularly, having arranged to have those faxes sent to Gorss – but denies responsibility for the sending of the E & G Fax. At all times relevant to this case, Gorss operated a Super 8 motel

and E & G operated a Wingate Inn; both of these franchises are subsidiaries of Wyndham Hotel Group ("WHG"). Safemark sells and leases safes for use in hotel rooms.

WHG franchisees are required to meet certain standards in operating their hotels. To that end, WHG affiliate Worldwide Sourcing Solutions, Inc. ("WSSI") operates an "Approved Supplier" program, through which franchisees can purchase goods and services from WSSI-vetted suppliers.[1] Franchisees who make purchases from an Approved Supplier know that the product or service meets the required standard. WSSI receives a commission on most purchases made through the program. WSSI periodically provides Approved Suppliers with a database of franchisee contact information. At all times relevant to this suit, Safemark was an Approved Supplier.

On September 19, 2016, Gorss filed the instant suit, a putative class action, asserting violations of the Telephone Consumer Protection Act of 1991, as modified by the Junk Fax Prevention Act of 2005 ("TCPA"). On February 2, 2017, Gorss filed an Amended Complaint (Doc. 43), adding E & G as an additional plaintiff. On April 5, 2018, the Court denied the Plaintiffs' motion to certify its class. (Doc. 84). The instant motions followed.

**II.     Legal Standard**

The TCPA makes it unlawful "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C) (2006). The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is

---

[1] Franchisees are required to purchase certain items from Approved Suppliers, but not all items.

transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."  *Id.* § 227(a)(5).

The TCPA provides an exception to the prohibition on unsolicited advertisements where (1) the unsolicited advertisement "is from a sender with an established business relationship with the recipient;" (2) the sender obtained the recipient's fax number either via "voluntary communication" from the recipient or from "a directory, advertisement, or site on the internet" to which the recipient agreed to make the number publicly available; and (3) the unsolicited advertisement contains an opt-out notice meeting the requirements set forth in 47 U.S.C. § 227(b)(2)(D).  47 U.S.C. § 227(b)(1)(c).

## III.    Analysis[2]

### A.    The Gorss Faxes

In 1998, Gorss entered into a franchise agreement with Super 8 Motels, Inc., which is now known as Super 8 Worldwide, Inc. ("SWI").  WHG owns SWI.  In 2012, Gorss registered to attend the "Wyndham Global Conference," an annual event at which Approved Suppliers set up promotional displays to advertise their products to WHG franchisees.  Prior to the 2013 Wyndham Global Conference, using contact information supplied by WSSI, Safemark arranged to have two faxes sent to a number of franchisees, including Gorss.  Safemark does not dispute that Gorss received the two faxes at issue on September 4, 2013 and September 6, 2013.

---

[2] Safemark makes several arguments that the Plaintiffs lack standing to pursue their TCPA claims.  One of these arguments, based on *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2017), was considered and rejected in a previous order (Doc. 26).  The Court finds that the other standing arguments raised by Safemark in connection with the instant motion do not merit extended discussion.

In addition, the Plaintiffs continue to argue that even solicited faxes must include an opt-out notice, an argument rejected by the Court in the order denying class certification.  (Doc. 84 at 12-13).  The Court sees no basis for reconsidering that determination here.

Safemark argues that the Gorss Faxes were not unsolicited – and therefore sending them did not violate the TCPA – because Gorss had given permission to (1) receive faxes and (2) receive advertisements from Approved Suppliers. (Doc. 95 at 4-5). As to the first point, Gorss provided its fax number to SWI in conjunction with its registration for the 2012 Wyndham Global Conference and on other occasions, such as on a "Contact Form" it submitted in 2010. (Doc. 70-6 at 4). As to the second, Safemark relies on Gorss's franchise agreement. (Doc. 95 at 4). Pursuant to that agreement, Gorss was obligated to participate in the Approved Supplier program.[3] In addition, Section 4.4 of the agreement, titled "Purchasing and Other Services," provided as follows:

> We may offer optional assistance to you with purchasing items used at or in the Facility. <u>Our affiliates may offer this service on our behalf.</u> We may restrict vendors authorized to sell proprietary or Mark-bearing items in order to control quality, provide for consistent service or obtain volume discounts. We will maintain and provide to you lists of suppliers approved to furnish Mark-bearing items, or whose products conform to System Standards.

(Doc. 70-6 at 50) (emphasis added).

Safemark argues that by agreeing that SWI affiliates could offer assistance in purchasing items for the facility, such as through the Approved Supplier program, and by providing its fax number to SWI, Gorss was giving its permission to receive advertisements, by fax, from affiliates such as Approved Suppliers. (Doc. 96 at 6-7).[4] Gorss generally denies that any entity had

---

[3] Section 3.10 of the franchise agreement, titled "Purchasing," required that Gorss "purchase or obtain certain items we designate as proprietary or that bear or depict the Marks, such as signage, only from suppliers we approve." (Doc. 70-6 at 46).

[4] In addition, in a deposition taken in a different TCPA case, Gorss's Rule 30(b)(6) representative – its president, Steven Gorss – testified that he understood that in signing the franchise agreement he had given permission for affiliates to "send me advertising any time they wanted," though he denied having given them (or anyone else) permission to send him such ads by fax. (Doc. 95 at 4-5).

permission to send it fax advertisements and argues that the TCPA requires that permission be given to the entity actually responsible for sending the fax, and that it did not give such permission to Safemark. (Doc. 102 at 7). However, Gorss agreed that it could be contacted by SWI affiliates in regard to purchasing items for its hotel. This permission, along with the provision of its fax number to SWI, precludes Gorss from arguing that the faxes it received from Safemark pursuant to the Approved Supplier program were unsolicited. *See, e.g.*, *Practice Mgmt. Support Servs., Inc. v. Appeal Sols., Inc.*, 2010 WL 748170, at * 1 (E.D. Ill. March 1, 2010).

### B.   The E & G Fax

The E & G Fax was sent in 2015 by a third-party vendor, WestFax, at the direction of WSSI. It contained advertisements for a total of five Approved Suppliers, including Safemark. Safemark contends that it did not authorize WSSI to send the E & G Fax and therefore it cannot be held responsible for it under the TCPA. (As noted above, WSSI receives a commission on most purchases made through the Approved Supplier program, giving it an independent incentive to advertise products of those suppliers to Wyndham franchisees.) E & G vigorously disputes this assertion, pointing to communications between WSSI and E & G discussing the sending of such a fax. For purposes of this motion, the Court will assume that Safemark was responsible for sending the E & G Fax.

Safemark makes the same argument in regard to E & G that it made in regard to Gorss – *i.e.*, that sending the E & G Fax did not violate the TCPA because E & G had given its permission to receive such advertising faxes. (Doc. 96 at 22). E & G entered into a franchise agreement in 1997 with Hotel Franchising Limited Partnership, which is now known as Wingate Inns, L.P. ("Wingate Inns"). Wingate Inns is also owned by WHG. E & G provided its fax number to

Wingate Inns when it executed the franchise agreement. (Doc. 95 at 7). As was the case for Gorss, E & G's franchise agreement required that E & G purchase certain items from suppliers approved by Wingate Inns (Doc. 70-6 at 204) and provided that Wingate Inns and its affiliates could offer assistance with regard to purchasing items for E & G's hotel (Doc. 70-6 at 207). The Court finds that the same result applies to E & G as to Gorss: E & G gave its permission to receive advertising faxes in regard to the Approved Supplier program, and therefore no reasonable factfinder could determine that the E & G fax was unsolicited.

**IV. Conclusion**

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Summary Judgment (Doc. 96) filed by the Defendant, Safemark Systems, L.P., is **GRANTED**. And it is further

**ORDERED** that the Motion for Summary Judgment Filed by the Plaintiffs (Doc. 94) is **DENIED.** The Clerk is directed to enter judgment in favor of the Defendant and close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on November 15, 2018.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE